Bella **OBERLANDER** and Sandor **Oberlander, Flatbush Manor Care Center, Plaintiffs-Appellants,**

v.

Cesar **PERALES, Commissioner of the State of New York Department of Social Services, David Axelrod, M.D., Commissioner of the State of New York Department of Health, Michael Finnerty, New York State Director of Budget, Defendants-Appellees.**

**No. 1200, Docket 84–7023.**

United States Court of Appeals, Second Circuit.

Argued May 10, 1984.
Decided June 29, 1984.

Marvin Neiman, New York City (Theodore T. Mairanz, Law Offices of Marvin Neiman, New York City, on brief), for plaintiffs-appellants.

Robert A. Forte, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of State of N.Y., Melvyn Leventhal, Deputy First Asst. Atty. Gen., Judith Gordon, Asst. Atty. Gen., New York City, on brief), for defendants-appellees.

Before FEINBERG, Chief Judge, WINTER, Circuit Judge, and LASKER, District Judge.[*]

WINTER, Circuit Judge:

Bella Oberlander and Sandor Oberlander, doing business as Flatbush Manor Care Center ("Flatbush Manor"), appeal from a judgment dismissing their complaint.[1] The complaint alleged that in reducing the daily per patient reimbursement rate for Flatbush Manor's provision of services to Medicaid patients, the defendants, state officials administering the New York Medicaid program, violated federal law and deprived Flatbush Manor of property without due process, all in violation of 42 U.S.C. § 1983 (1976). The complaint also asserted pendent state claims. The district court dismissed the complaint on the grounds that the conduct alleged did not violate federal statutory law and that the state procedures utilized were consistent with due process guarantees.

We affirm.

## FACTS AND PROCEEDINGS BELOW

Flatbush Manor is a skilled nursing facility licensed under New York law to provide residential health care. It has participated in the Medicaid program since 1981 as a provider reimbursed by state and federal funds for the cost of services rendered to eligible patients. *See* 42 U.S.C. §§ 1396 *et seq.* (1976). Over 95% of Flatbush Manor's operating revenues are derived from Medicaid reimbursement. Reimbursement rates are based on the average cost of services within a particular geographic area or on a particular facility's budgeted cost, whichever is lower. 10 N.Y.C.R.R. § 86–2.15(b)(1), (2) (1983).

On November 2, 1982, the Bureau of Residential Health Care Facility Reimbursement ("Bureau"), an agency of the New York State Department of Health, informed Flatbush Manor by letter that, "based on 1981 costs," its reimbursement rate for calendar year 1983 had been fixed at $99.84 per patient per day. The letter informed Flatbush Manor that, if it objected to the rate calculation, it could pursue an administrative appeal through written submissions as to issues of fact and law.

On March 14, 1983, the Bureau informed Flatbush Manor that its daily reimbursement rate for calendar year 1983 had been reduced to $92.83 as a result of "technical corrections." The March 14 letter also informed Flatbush Manor of its right to an administrative appeal in the event it objected to the rate.

Shortly after receipt of the March 14 letter, Flatbush Manor informed the Bureau that it believed the original rate to have been correctly computed and that it objected to the revised rate. In response, the Bureau again referred Flatbush Manor to its right to an administrative appeal mentioned in the previous two letters. It also indicated that the Bureau intended to recoup any excess payments already made in 1983 by imposing a set-off against future reimbursements. The amount of the excess to be recouped by set-off was about $100,000.

Flatbush Manor brought this action for a declaratory judgment that the original rate had been correctly calculated and was revised in violation of the federal Medicaid laws and Flatbush Manor's right to due process. Flatbush Manor also sought an

[*] Hon. Morris E. Lasker of the United States District Court for the Southern District of New York, sitting by designation.

[1] The procedural posture of this case is untidy. Although the dismissal was technically on the pleadings, Judge Sweet clearly relied upon evidentiary materials submitted by the parties in a preliminary injunction hearing. However, neither party claims that a dispute over a material fact exists or that they have not had an adequate opportunity to submit such materials. We therefore decide the case on the basis of the agreed facts.

injunction preventing the Bureau from implementing the revised rate and from recouping prior overpayments "until plaintiffs have availed themselves of the remedies afforded them by law."

Judge Sweet denied Flatbush Manor's request for a preliminary injunction against implementation of the revised rate and recoupment of overpayments. He held that, under New York law, Flatbush Manor enjoyed no property interest in future Medicaid reimbursement payments, but he implicitly found a protected property interest in the recoupment of excess payments. Nevertheless, he held that Flatbush Manor was not entitled to a pre-recoupment hearing because a variety of procedural safeguards available under New York law ensured Flatbush Manor both notice of the revision and an opportunity to respond before the set-off was assessed.

Judge Sweet later dismissed the case on the grounds that he lacked jurisdiction to decide whether the Bureau had violated relevant state regulations and that the due process claim lacked merit.

## DISCUSSION

■ To prevail on its statutory and constitutional claims under 42 U.S.C. § 1983, Flatbush Manor must establish that: (i) "the conduct complained of was committed by a person acting under color of state law"; and (ii) that conduct deprived it "of rights, privileges or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). Because the revision in Flatbush Manor's reimbursement rate and the resulting set-off were indisputably effected by persons acting under color of state law, we need examine only whether the revision and set-off amounted to a deprivation forbidden by Section 1983.

### 1. *Flatbush Manor's Statutory Claim*

■ Flatbush Manor's federal statutory claim is entirely derived from its allegation that the New York state authorities have violated state regulations, N.Y.C.R.R. § 86

("Part 86"), in reducing the reimbursement rate. A state authority's failure to comply with state regulations does not facially implicate an interest secured by the "laws of the United States." Flatbush Manor argues, however, that the state Medicaid plan, including Part 86, must conform with the federal Medicaid statute, 42 U.S.C. § 1396a (1976), and that, therefore, any "violation of Part 86 is *ipso facto* a violation of the federal Medicaid laws and regulations."

■ We reject this tortuous argument, which, if valid, would provide a jurisdictional basis for federal judicial review of every disputed state administrative ruling relating to Medicaid. " '[S]uits in federal court under § 1983 are proper to secure compliance with the provisions of the Social Security Act on the part of participating States,' " *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980) (quoting *Edelman v. Jordan,* 415 U.S. 651, 675, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974)), but there is no authority anywhere supporting the proposition that a state Medicaid regulation becomes a federal law merely by virtue of its inclusion in a state plan required by federal law. To the contrary, every precedent cited by Flatbush Manor has involved allegations of a specific conflict between a state plan or practice on the one hand and a federal mandate on the other. *See, e.g., New York City Health & Hospitals Corp. v. Blum,* 708 F.2d 880 (2d Cir.1983) (allegation that a length of stay disallowance conflicts with 42 U.S.C. § 1320c (1976)); *Massachusetts Association of Older Americans v. Sharp,* 700 F.2d 749 (1st Cir.1983) (Medicaid terminations alleged to be in conflict with 42 C.F.R. § 435.916(c) (1983)); *Massachusetts General Hospital v. Sargent,* 397 F.Supp. 1056 (D.Mass.1975) (state policy alleged to conflict with then 42 U.S.C. § 1396a(a)(13)(D)). Since Flatbush Manor alleges no such conflict between the state plan and federal law, we dismiss the statutory claim.

## 2. *Constitutional Claim*

 The gravamen of Flatbush Manor's constitutional claim is that in revising its reimbursement rate and recouping excess payments, state officials deprived it of property without due process of law in violation of the fourteenth amendment. To prevail upon such a claim, Flatbush Manor must establish, *inter alia,* the existence of a valid property interest. Such interests are created, not by the Constitution, but by an independent source such as state law. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Because Medicaid providers clearly have no property interest in future reimbursements under New York law, *Hurlbut v. Whalen,* 58 A.D.2d 311, 317, 396 N.Y.S.2d 518, 523 (4th Dept.1977) *citing Sigety v. Ingraham,* 29 N.Y.2d 110, 115–16, 272 N.E.2d 524, 526–27, 324 N.Y.S.2d 10, 13–14 (1971), Flatbush Manor's claim based upon the recalculation of a rate for future services must be dismissed.

 Flatbush Manor's claim *vis a vis* the recoupment of monies for services already performed stands on a different footing, however. In contrast to the refusal to recognize a property interest in future Medicaid reimbursement, New York acknowledges a property interest in money paid for services already performed in reliance on a duly promulgated reimbursement rate. *In re White Plains Nursing Home v. Whalen,* 53 A.D.2d 926, 927, 385 N.Y.S.2d 392, 394 (3d Dept.1976), *aff'd* 42 N.Y.2d 838, 397 N.Y.S.2d 378, 366 N.E.2d 79 (1977). We therefore address the question whether this deprivation occurred without due process.

 Due process has two indispensable components—notice and an opportunity to be heard. *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *Burtnieks v. City of New York,* 716 F.2d 982, 986 (2d Cir.1983). Notice is not a serious issue here. The March 14, 1983 letter indicated that the newly computed rate would apply to all payments for calendar year 1983, thus putting any reasonable person on notice that payments for services performed earlier that year would be affected. Moreover, in an affidavit submitted in support of its motion for a preliminary injunction, Flatbush Manor's administrator indicated his belief that the recoupment would begin April 13, 1983, when the facility's next Medicaid reimbursement was due. Given these circumstances, we have no doubt that notice of the recoupment was adequate.

 We also hold that the available state procedures afforded Flatbush Manor a meaningful opportunity to be heard. Flatbush Manor could have requested a hearing on the rate revision within thirty days of receipt of the March 14 letter, a procedure mentioned in the letter itself. N.Y.C. R.R. § 86–2.14(b)(1) (1982). It is true that such a hearing would have been granted only if staff review of the request revealed disputed factual issues and that Flatbush Manor had no direct administrative appeal available from a staff denial of a hearing. *Id.* § 86–2.14(b)(2) (1982). Nevertheless, it could have commenced an Article 78 proceeding in the New York courts, N.Y.Civ. Prac.Law §§ 780.1 *et seq.* (McKinney 1983) to challenge the rate revision or to compel a full evidentiary hearing. *See Solnick v. Whalen,* 49 N.Y.2d 224, 230–31, 401 N.E.2d 190, 194–95, 425 N.Y.S.2d 68, 72–73 (1980); *Clove Lakes Nursing Home v. Whalen,* 45 N.Y.2d 873, 874–75, 383 N.E.2d 106, 106–07, 410 N.Y.S.2d 804, 805–06 (1978).

 In the face of the state procedural remedies, Flatbush Manor complains that it was not offered a full evidentiary hearing prior to the recoupment of funds. However, we decline to attach talismanic significance to the availability of a pre-deprivation evidentiary hearing for this type of claim. Prior to the deprivation, Flatbush Manor had the right to make written submissions on disputed issues of fact and law and had, following the deprivation, procedures available to compel a full-scale evidentiary hearing on its claim. These procedures satisfy due process. In *Mathews v.*

*Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), three factors were identified as relevant to a determination of "what process is due prior to the initial [deprivation] pending review." *Id.* at 333, 96 S.Ct. at 902. They are: (i) the private interest affected; (ii) the risk of erroneous deprivation under existing procedures and probable value of additional safeguards; and (iii) the interest of the government. *Id.* at 335, 96 S.Ct. at 903. Examination of these factors leads to the conclusion that Flatbush Manor was not entitled to a pre-deprivation evidentiary hearing as a constitutional right.

First, Flatbush Manor's interest in the money that is subject to recoupment is significantly less compelling than the private interests involved in *Mathews* (no hearing required before interim termination of disability benefits) and *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (hearing required before termination of welfare benefits). In both *Mathews* and *Goldberg* the private parties faced complete termination of the income stream at issue. In the instant case, the Bureau merely imposed a set-off against future reimbursements. In addition, in both *Mathews* and *Goldberg*, the private parties were the direct and intended beneficiaries of the program in question. Here, by contrast, Flatbush Manor is a provider and thus only an incidental beneficiary of the Medicaid program, *see Case v. Weinberger*, 523 F.2d 602 (2d Cir.1975).

Second, we have been given no reason to believe that there is a serious risk that revised rates are erroneously calculated. Reimbursement rates are based on the average cost of services within a given geographic area or on an individual facility's budgeted cost, whichever is lower. Since a hearing to settle disputed issues of fact is almost immediately available, the room for unredressible error seems rather narrow. For example, the state claims that, because of administrative error, Flatbush Manor's original 1983 reimbursement rate was based on average cost, although budget cost was lower. When the error was discovered, the rate was revised. Flatbush

Manor's response to this detailed explanation is simply that the original rate was "correct" and that the revised rate is "incorrect." Although we have reason to appreciate brevity, this response does little to persuade us that the calculation of Medicaid reimbursement rates calls for more elaborate pre-recoupment hearings.

As to the third *Mathews* factor—the government interest at stake—we cannot predict with any precision the costs that would result if, as a general rule, Medicaid providers enjoyed a right to a hearing prior to the recoupment of allegedly excess reimbursements. Given the number of New York cases in which such hearings have been sought, *see, e.g., Clove Lakes Nursing Home, supra; Rowland v. Axelrod*, 108 Misc.2d 803, 438 N.Y.S.2d 891 (Sup.Ct. Albany County 1981); *Eden Park Health Services v. Whalen*, 77 A.D.2d 673, 429 N.Y.S.2d 781 (3d Dept.1980), *aff'd* 54 N.Y.2d 929, 445 N.Y.S.2d 152 (1981), we assume that the cost would not be insubstantial.

Finally, *Mathews* cautions that "substantial weight must be given to the good-faith judgments of the individuals charged ... with the administration of social welfare programs that the procedures they have provided assure fair consideration of the entitlement claims of individuals." 424 U.S. at 349, 96 S.Ct. at 909.

*Parratt, supra,* is not to the contrary. In *Parratt*, the Supreme Court merely repeated the oft-expressed statement that "some kind of hearing is required at some time before a State finally deprives a person of his property interest," 451 U.S. at 540, 101 S.Ct. at 1915, and that due process does not "*always* require[ ] the State to provide a hearing prior to the deprivation of property," *id.* at 540, 101 S.Ct. at 1915 (emphasis in the original). *Parratt* then held that when a deprivation occurs "not [as] a result of some established state procedure" but "as a result of a random and unauthorized act by a state employee," *id.* at 541, 101 S.Ct. at 1916, no pre-deprivation hearing is required. *Parratt* did *not* estab-

lish the converse—that when a deprivation is the result of an established state procedure, a prior hearing is required—and thus does not address the question at issue here.

Finally, we note that in *Burtnieks, supra,* we held that, absent an emergency, a hearing is required prior to the final destruction of tangible property. 716 F.2d at 986–89. In *Burtnieks* no temporary deprivation was possible pending review, because the very nature of the deprivation in that case—the demolition of a building—ensured that the plaintiff could not be restored to the position she had occupied prior to the deprivation, *id.* at 987 n. 3. In the instant case, by contrast, Flatbush Manor can be fully restored to its former position should the original reimbursement rate be found to have been correct.

Affirmed.