985 F.2d 90
 80 Ed. Law Rep. 792
 INTERBORO INSTITUTE, INC., Plaintiff-Appellee-Cross-Appellant,
v.
Cornelius J. FOLEY, individually and as President of the New
York State Higher Education Services Corporation, the Higher
Education Services Corporation, Edward V. Regan,
individually and as Comptroller of the State of New York and
the Office of the Comptroller of the State of New York,
Department of Audit and Control,
Defendants-Appellants-Cross-Appellees.
 No. 197, Dockets 92-7277, 92-7315.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 25, 1992.
Decided Feb. 5, 1993.
 
 Richard M. Kraver, New York City (David M. Levy, Richard A. Braunstein, Kraver & Levy, of counsel), for Plaintiff-Appellee-Cross-Appellant.
 Daniel Smirlock, Asst. Atty. Gen. of State of NY, Albany, NY (Robert Abrams, Atty. Gen., Peter H. Schiff, Deputy Sol. Gen., Nancy A. Spiegel, Asst. Atty. Gen., of counsel), for Defendants-Appellants-Cross-Appellees.
 Before: NEWMAN, WINTER and MAHONEY, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Interboro Institute, Inc., an accredited junior college, appeals from Judge McAvoy's denial of its motion for a preliminary injunction.[1] Interboro claims its Fourteenth Amendment due process rights were violated when the President of the Higher Education Services Corporation ("HESC"), Cornelius Foley, adopted, without an evidentiary hearing, the findings of the Office of the Comptroller of the State of New York ("OSC") that certain Interboro students had not met the school's published entrance requirements. Foley disallowed over $200,000 of Interboro's requested funds from New York State's Tuition Assistance Program ("TAP") and Supplemental Tuition Assistance Program ("STAP"). Interboro sought to enjoin defendants from setting off disallowed payments from current tuition assistance, from publishing their findings, and from denying Interboro an evidentiary hearing before withholding future assistance payments. We affirm and remand with instructions to dismiss the complaint because Interboro received all the process it was due.
 
 
 2
 Interboro is a junior college accredited by the New York State Department of Education. Interboro receives TAP and STAP funds on behalf of the students it has certified as entitled to such funds. Educ.L. § 665(3)(a) & (c)(i) (1988); 8 N.Y.C.R.R. § 2206.1. In February 1985, after a site visit and interviews with Interboro faculty, the Education Department concluded that the admission criteria of Interboro were suspect. See 8 N.Y.C.R.R. § 52.1 ff. Pursuant to its statutory responsibilities, see Educ.L. § 665(3)(b), the OSC Department of Audit and Control commenced an audit of Interboro in October 1985.
 
 
 3
 Interboro sought and obtained a temporary restraining order in the Northern District preventing the Education Department from denying re-registration of Interboro's academic programs. On February 19, 1987, the OSC issued a preliminary audit report that proposed disallowances of certain TAP awards to Interboro for students who did not satisfy the school's published admissions requirements. On March 13, Interboro responded with a fourteen-page written submission of its position. The OSC reviewed this response and then issued an additional preliminary audit report that proposed yet more disallowances for students who did not meet STAP requirements. Interboro again responded, alleging that the findings of the Education Department's site visit were made in bad faith. The OSC decided to delay its draft audit report until Interboro's litigation with the Education Department was resolved. After the temporary restraining order was lifted in July 1989, the OSC terminated the 1986 audit without any resolution of the issues concerning Interboro's admissions policies and without any TAP disallowances. However, the OSC began a new audit focusing on the 1988-89 academic year.
 
 
 4
 On June 21, 1990, the OSC sent Interboro a preliminary audit report proposing to disallow 31 of 100 awards. Fourteen of the awards were allegedly improper because the school could not document that the students completed the tenth grade. After projecting the findings over Interboro's student population, the OSC concluded that a $120,000 overpayment had occurred. On July 26, 1990, Interboro responded in writing to these findings. It contended, inter alia, that the students had been admitted pursuant to new admissions requirements that accepted a successful completion of the Test of Adult Basic Education and Interboro's entrance examination in lieu of completion of the tenth grade. Interboro stated that this requirement had inadvertently not been published in Interboro's 1988-89 catalogue.
 
 
 5
 After reviewing Interboro's response, the OSC transmitted to the HESC, the Education Department, and Interboro a draft audit report. The report concluded that Interboro's substitution of an equivalency test for tenth grade completion was not an acceptable practice. On May 30, 1991, Interboro again responded with a lengthy report. Unpersuaded, the Education Department and the HESC concurred in the draft audit report's findings and conclusions.
 
 
 6
 The OSC issued a final audit report on July 12, 1991 that recommended disallowances of $228,843. Interboro then wrote to HESC President Foley, advised him "of the extensive submissions made by Interboro in response to [the OSC's] findings, enclosed copies of Interboro's July 26, 1990 and May 30, 1991 submissions together with the several exhibits annexed thereto, and asked HESC to review them prior to making a final determination as to the recommendations made by the [OSC]." Brief of Plaintiff-Appellee-Cross-Appellant Interboro Institute, Inc. at 13.
 
 
 7
 Subsequently, Foley demanded a refund from Interboro of the recommended disallowance. His letter notified Interboro that it could dispute the demand by written response and could request an administrative hearing. Foley noted that HESC lacked authority "to review matters within the jurisdiction of the State Education Department" and stated that the "issues of good academic standing and matriculation ... are within the [Education Department's] jurisdiction." On September 10, 1991, Interboro submitted another lengthy response to the final audit report, in which it requested an evidentiary hearing. On October 4, 1991, Foley reiterated by letter the demand for payment and denied the request for an evidentiary hearing, noting that the issues raised in Interboro's September 10 letter "to support your claim to an evidentiary hearing involve matters within the exclusive jurisdiction of either the State Education Department or the Department of Audit and Control." Finally, Foley noted that if repayment arrangements were not made within fifteen days of the receipt of the letter, the amount would be deducted from the TAP funds currently owed Interboro pursuant to Educ.L. § 665(4)(c).
 
 
 8
 On November 1, 1991, Interboro commenced the present action pursuant to 42 U.S.C. § 1983 (1988), moving, inter alia, for a preliminary injunction against the defendants: (i) preventing them from withholding properly certified financial aid for the current academic year; (ii) preventing them from disseminating their findings concerning the plaintiff; and (iii) ordering Foley and/or Regan to hold a pre-deprivation hearing. Judge McAvoy ruled that to the extent that the motion sought payment of funds already withheld, it was barred by the Eleventh Amendment, and he also denied the other forms of relief sought in the motion. This appeal followed.
 
 
 9
 Because it is clear that there is no set of provable facts on which Interboro can prevail on its complaint, we need not dwell on the standards governing appellate review of preliminary injunctions. Interboro claims that its due process rights were violated because its property interest in the TAP and STAP funds and its liberty interest in its reputation were taken without due process. Specifically, Interboro argues that due process required Foley to grant them an evidentiary hearing before disallowing the TAP and STAP funds. Even assuming that Interboro has a property or liberty interest at stake, it received constitutionally ample process before any deprivation occurred.
 
 
 10
 Due process requires notice and the opportunity to be heard. See Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Interboro does not dispute that it received notice of the deprivation. Regarding Interboro's opportunity to be heard, our decision in Oberlander v. Perales, 740 F.2d 116 (2d Cir.1984), is dispositive. In Oberlander, we affirmed the dismissal of a claim alleging that the state officials administering the New York Medicaid program revised its reimbursement rate and recouped excess payments without a constitutionally required evidentiary hearing. We did so because we concluded that the state procedural remedies afforded "a meaningful opportunity to be heard." Id. at 120. Declining to attach talismanic significance to the availability of a pre-deprivation evidentiary hearing, we noted that the claimant "had the right to make written submissions on disputed issues of fact and law and had, following the deprivation, [N.Y. Article 78] procedures available to compel a full-scale evidentiary hearing on its claims." Id. We held that these procedures satisfy due process.
 
 
 11
 This analysis controls the instant matter. Interboro had an opportunity to submit a written response at every level of the OSC audit and HESC review. Interboro availed itself of each opportunity. Its responses included submissions to the OSC after the preliminary audit and the draft audit, a submission to Foley after the final audit report and before Foley had made a determination, and written submissions invited by Foley in his letter demanding repayment. Moreover, as the OSC's reports indicate, Interboro's submissions were considered and responded to in subsequent reports. Finally, Interboro, like the claimant in Oberlander, could have commenced an Article 78 proceeding in the New York courts, but declined to do so. See Drake Business Schools Corp. v. New York State Higher Educ. Servs. Corp., 153 A.D.2d 121, 550 N.Y.S.2d 188 (3d Dep't 1990).
 
 
 12
 The purpose of a pre-deprivation hearing is to ensure that decision-makers have before them the claimant's legal arguments and do not act on a one-sided or otherwise incomplete factual presentation. The nature of the property or liberty interest at stake and the legal issues determine the kind of hearing required. See Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976).
 
 
 13
 The procedures here were more than ample under the Mathews test. Interboro's position on the facts and the law were exhaustively rehearsed before the relevant decision-makers, and an evidentiary hearing could not have affected the outcome. Moreover, there is a significant governmental interest in the efficient administration of a program review involving several different state agencies. See id. at 335, 96 S.Ct. at 903. To require an evidentiary hearing that would be entirely duplicative and essentially meaningless would impair the review procedures. Accordingly, we hold that no further pre-deprivation hearing was required where the written submissions were accepted and reviewed at each stage of the evaluation process and a post-deprivation full evidentiary hearing was available under Article 78.
 
 
 14
 Although Interboro asserts that the state agencies involved were "out to get Interboro" and acted in bad faith, there is nothing in the record to support this claim. We have considered Interboro's other arguments and find them without merit. Finally, there is no set of provable facts on which Interboro can prevail on any of the claims in its complaint. Because the material facts are not in dispute and the record is comprehensive, see Consolidated Gold Fields PLC v. Minorco, S.A., 871 F.2d 252, 256 (2d Cir.), amended, 890 F.2d 569 (2d Cir.), cert. dismissed, 492 U.S. 939, 110 S.Ct. 29, 106 L.Ed.2d 639 (1989), we not only affirm the denial of the preliminary injunction but also remand for dismissal of the complaint.
 
 
 
 [1]
 Although the only matter before us is Interboro's appeal, the caption lists Interboro as a cross-appellant. That designation is the result of the following events. On March 5, 1992, Foley and Regan appealed from a decision that denied in part their motion for judgment on the ground of qualified immunity. On March 12, Interboro cross-appealed from the denial of a preliminary injunction, from that part of the decision that granted Foley's and Regan's cross-motion to dismiss Interboro's claims against the HESC and the OSC, and from "each and every other part of" the decision. Interboro moved to dismiss Foley's and Regan's appeal on the grounds that the decision was not final as required by 28 U.S.C. § 1291 and that it was not a collateral order entitled to interlocutory review because there were mixed questions of law and fact. Foley and Regan cross-moved to dismiss Interboro's appeal except insofar as it sought review from the denial of its motion for a preliminary injunction. We granted both motions. The only appeal before us, therefore, is from the denial of Interboro's motion for a preliminary injunction