OPINION OF THE COURT
Anthony J. Ferraro, J.
This is an action by plaintiff, a sewage works corporation, seeking (1) a declaratory judgment that certain sewage rates proposed by plaintiff, for the years 1977 through 1980, are fair and reasonable; (2) a money judgment in the amount of $211,000, the alleged value of investment property and equipment of which it was deprived without due process; (3) a money judgment for $590,500 pursuant to section 1983 of title 42 of the United States Code for deprivation of its rights under color of law, and (4) a judgment declaring section 121 of the Transportation Corporations Law unconstitutional and ineffective.
Plaintiff makes this application for a preliminary injunction establishing interim rates of $3.01 per 1,000 gallons for the year 1979; $3.21 per 1,000 gallons for the year 1980, and $3.56 per 1,000 gallons for the year 1981. Plaintiff also seeks a one-time additional assessment of $139.48 per single-family house and $69.74 per garden apartment *54 to pay tax arrears of $22,316.09 and avoid in rem foreclosure and to provide operating revenue during the pendency of this action.
Unlike public utilities which are under the jurisdiction of the Public Service Commission, plaintiff is governed by section 121 of the Transportation Corporations Law. This law provides that a sewage works corporation must agree with the local governing body on the rate to be charged. However, the statute fails to provide any procedure to resolve a stalemate.
In approving the statute in 1960, Governor Rockefeller stated that it would allow private corporations to enter a field previously reserved to public agencies and was a “new concept” designed to solve a vexing problem for growing communities (Rockefeller, Public Papers, 1960, p 594). He conceded that the law would need future amendments as experience dictated. On amending the statute in 1970, in a respect not here relevant, the Legislature acknowledged that there was a need to specify the respective obligations of the municipality and the developer. The failure of the Legislature to adequately supplement the enactment has precipitated plaintiff’s present predicament.
Plaintiff alleges it has been operating at a loss for the past several years; sustained a loss of $61,371 in 1980 and had an accumulated deficit of $379,490 as of December 31, 1980. Plaintiff further alleges that connection fees for new units were calculated by the municipality in fixing rates and the new construction has not materialized.
Defendants contend that the lack of new construction is the fault of plaintiff’s parent corporation, which did not develop the entire 300 acres, thus relegating the plaintiff to an operation limited to 40% of capacity. Defendants further contend that there is not authority to set interim rates nor to impose a one-time special assessment to recoup past unrealized revenues.
It is clear and uncontroverted that plaintiff is in serious financial distress.
A previous inability of the parties to agree on rates resulted in a trial before this court which fixed the rates for the years 1975 and 1976. This determination was affirmed *55 on appeal. (See Wild Oaks Utilities v Town of Lewisboro, 63 AD2d 701.)
Although the parties again failed to agree on a rate for 1977 and 1978, the municipality allowed the plaintiff to collect, as an interim payment, the amount it had proposed, without prejudice to plaintiff’s right to obtain judicial review.
On October 14, 1980, the town board proposed rates of $3.01 per 1,000 gallons for the year 1979 and $3.21 per 1,000 gallons for the year 1980. The town thereafter offered $3.56 per 1,000 gallons for the year 1981. All proposed rates included a connection fee of $1,500. However, the town has refused to allow plaintiff to collect the proposed rates for the years listed.
The silence of the statute on the fixing of interim rates cannot stifle the power of the court to exercise equitable jurisdiction under established principles. Although the court has no rate-fixing power per se, it has the right and the duty to prevent the confiscation of property without due process of law. A refusal of the municipality to allow collection of even the amount it considers fair and reasonable under the guise of statutory sanction could bankrupt the utility and defeat the intended purpose of the enactment. Even worse, a municipality could profit from its own unreasonableness in refusing to agree, and cast upon the utility the corresponding loss. Such conduct would not promote private enterprise, as contemplated, but would destroy it completely.
It is incumbent upon a court of equity to plug the legislative loopholes and prevent the perpetration of irreparable injury. There is precedent for such action. (See Suffolk Sanitary Corp. v Town Bd. of Town of Brookhaven, 55 AD2d 930.)
If plenary relief is available, preliminary injunctive relief must be granted when necessary to prevent intervening irreparable damage. (Graves v Lombardi, 42 AD2d 700.) It cannot be disputed that plaintiff has a clear legal right to some relief, at least to the extent of collecting the proffered amount.
*56 The concept of one-time assessment received judicial sanction in the prior trial herein, at which the court included a one-time connection fee in the rate package. The collection of a one-time assessment to cover the arrears in taxes should receive no less sanction. To the extent that the final rates established after trial are different, appropriate adjustments can be made in the customers’ bills.
Plaintiff’s application is granted in all respects, upon condition that it post an undertaking in the amount of $5,000. (CPLR 6312, subd [b].)
In order to prevent the plaintiff from being compelled to operate at the mercy of the defendants at a rate unilaterally fixed by them, a trial preference is granted in this action.