**RR VILLAGE ASSOCIATION, INC., Jay Stanleigh and Authur L. Penzel, Plaintiffs-Appellees,**

v.

**DENVER SEWER CORPORATION and Town of Roxbury (New York), Defendants-Appellants.**

**No. 803, Docket No. 86–7978.**

United States Court of Appeals, Second Circuit.

Argued Feb. 18, 1987.

Decided Aug. 26, 1987.

---

Herbert Jordan, Roxbury, N.Y. (Randlett Walster, Jordan & Walster, Roxbury, N.Y., on the brief), for plaintiffs-appellees.

Isadore H. Cohen, Nyack, N.Y. (K.D. Rothman, Nyack, N.Y., on the brief), for defendants-appellants.

Before VAN GRAAFEILAND, KEARSE, and PRATT, Circuit Judges.

KEARSE, Circuit Judge:

Defendants Denver Sewer Corporation ("Denver Sewer") and Town of Roxbury (New York) (the "Town") appeal from a judgment of the United States District Court for the Northern District of New York, Howard G. Munson, *Chief Judge,* entered in favor of plaintiffs RR Village Association ("RR Village" or the "Association"), *et al.,* declaring void for lack of due process the Town's action in approving prospective and retroactive increases in the rates charged by Denver Sewer to members of the Association without affording the Association or its members notice or a hearing. On appeal, defendants contend principally that the district court should have dismissed the complaint on the grounds that (1) plaintiffs had no property interest in the existing sewer rates, and (2) even if plaintiffs had a property interest, due process was satisfied by the availability to plaintiffs of judicial review of the Town's actions. Finding merit only in the contention that plaintiffs had no property interest with respect to rates for future services, we reverse so much of the judgment of the district court as declared void the Town's approval of prospective rate increases, and in all other respects we affirm.

## I. BACKGROUND

The sequence of pertinent events is not in dispute.

### A. *The Parties and the Events*

RR Village is a membership corporation whose members own townhouse units in a development known within the Town as Roxbury Run. Denver Sewer provides sewage disposal service to all individually owned units in Roxbury Run. The Town, acting through its governing body ("Town Board"), has responsibility under N.Y. Transp.Corp.Law § 121 (McKinney Supp. 1987), either to provide sewage disposal services for its inhabitants or to contract with a private corporation for provision of these services.

Prior to October 8, 1984, the Town had contracted for Denver Sewer to provide sewage disposal services in Roxbury Run, setting the rates that Denver Sewer could charge at $13 for the first 9,000 gallons of sewage and $1.05 for each additional 1,000 gallons. On October 3, 1984, Denver Sewer petitioned the Town for rate increases to $62.50 for the first 9,000 gallons of sewage and $5.07 for each additional 1,000 gallons. It requested that the increases be made retroactive to January 1, 1983. In support of these requests, Denver Sewer submitted figures to show that from 1980 to 1983 it had operated at a loss and that the then-current rates did not generate income sufficient to meet current expenses and provide a return to stockholders.

On October 8, 1984, the Town Board met and, after hearing from Denver Sewer, passed a resolution granting the requested increases and making the new rates retroactive to January 1, 1983. Neither the Association nor any Roxbury Run homeowner had received notice of Denver Sewer's petition or of the Town's intent to consider such a petition at the October 8 meeting; neither the Association nor any member was present to be heard in opposition.

Plaintiffs learned of the rate increases through newspaper reports and promptly wrote the Town Board (1) stating that the homeowners had not received prior notice of Denver Sewer's petition, (2) questioning the figures presented by Denver Sewer, and (3) stating that the rate increase breached undertakings made to the home-

owners by Roxbury Run's developer, which was Denver Sewer's parent, that in return for reductions in other maintenance payments owed by the developer, the developer would operate the water and sewage facilities, even if at a financial loss. Plaintiffs' letter urged the Town Board to undo, if possible, its approval of the rate increases. The Town did not reopen the matter and took no further action.

Roxbury Run homeowners soon began to receive bills reflecting the increased rates. They apparently continued to pay at the pre-October 8, 1984 rates and refused to pay amounts charged in excess of those rates.

### B. *The District Court's Decisions*

In January 1985, plaintiffs commenced the present action under 42 U.S.C. § 1983 (1982), contending that the Town's approval of rate increases, prospective and retrospective, without affording the Association or its members an advance hearing deprived plaintiffs of their property without due process. The complaint sought, *inter alia,* a judgment declaring that the new rates were void. Both sides moved for summary judgment.

In a Memorandum-Decision and Order filed April 28, 1986 ("First Decision"), the court at first granted summary judgment in favor of defendants. Finding that there had been no cessation of sewer service to plaintiffs but only increases in the rates, the court held that N.Y.Transp.Corp.Law § 121 did not give ratepayers a property interest in previously fixed sewer rates, and hence plaintiffs had not shown any deprivation of their property. The court also ruled that the Town's approval of rate increases was legislative action for which due process did not require an advance hearing. Accordingly, a judgment was entered dismissing the complaint.

Plaintiffs timely moved for reconsideration, and, in a Memorandum-Decision and Order filed October 6, 1986 ("Second Decision"), the court vacated the prior judgment and granted summary judgment in favor of plaintiffs, voiding the Board's October 8, 1984 approval of rate increases.

In the Second Decision, the court held that ratepayers have a property interest in the continuation of existing rates until new proposed rates are found to be fair and reasonable. It held that the Town's rate determination was not legislative action and that due process required public notice and a hearing prior to the deprivation of the ratepayers' property interest.

A formal judgment was entered in favor of plaintiffs on October 23, 1986. On November 17, 1986, defendants appealed.

### II. APPELLATE JURISDICTION

At oral argument of this appeal, we called to counsel's attention the fact that the Second Decision of the district court, granting plaintiffs' timely motion to vacate the judgment that had been entered on the First Decision, was filed on October 6, 1986, more than 30 days, *see* Fed.R.App.P. 4(a)(1), prior to the filing of defendants' November 17 notice of appeal. Noting that the Federal Rules of Appellate Procedure provide that where a timely motion has been made under Fed.R.Civ.P. 59 to alter or amend the judgment, "the time for appeal for all parties shall run from the entry of the order ... granting or denying ... such motion," Fed.R.App.P. 4(a)(4), we inquired whether defendants' notice of appeal was timely. We conclude that, in light of the combined effect of Fed.R.App.P. 4(a)(6) and Rules 54 and 58 of the Federal Rules of Civil Procedure, the document that initiated the running of defendants' time to appeal was the October 23, 1986 judgment entered following the Second Decision, not the Second Decision itself, and that defendants' notice of appeal was therefore timely.

For purposes of the time limitations imposed by Fed.R.App.P. 4(a)(4), an "order is entered within the meaning of this Rule 4(a) when it is entered in compliance with Rules 58 and 79(a) of the Federal Rules of Civil Procedure." Fed.R.App.P. 4(a)(6). Rule 58 provides that "[e]very judgment shall be set forth on a separate document ... [, and] is effective only when so set forth...." Fed.R.Civ.P. 58. Rule 54 defines the term "judgment" to include "any

order from which an appeal lies." Thus, under Fed.R.App.P. 4(a)(6), an order disposing of a motion under Fed.R.Civ.P. 59 is not effective until set forth on a separate document. *See Stern v. Shouldice,* 706 F.2d 742, 746 (6th Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 487, 78 L.Ed.2d 683 (1983); *Calhoun v. United States,* 647 F.2d 6, 8–10 (9th Cir.1981).

■ The separate-document requirement is designed to reduce uncertainty on the part of an aggrieved party as to when the time to file a notice of appeal begins to run. *See Bankers Trust Co. v. Mallis,* 435 U.S. 381, 384–85, 98 S.Ct. 1117, 1120, 55 L.Ed.2d 357 (1978) (per curiam); *United States v. Indrelunas,* 411 U.S. 216, 219–22, 93 S.Ct. 1562, 1563–65, 36 L.Ed.2d 202 (1973) (per curiam); *Kanematsu-Gosho, Ltd. v. M/T Messiniaki Aigli,* 805 F.2d 47, 48 (2d Cir. 1986) (per curiam); *Leonhard v. United States,* 633 F.2d 599, 611 (2d Cir.1980) (separate-document requirement is intended "to pinpoint, principally for the benefit of the appellant, the commencement of time for filing a notice of appeal"), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). Although a one-sentence order denying a motion satisfies the separate-document requirement, *see Cardillo v. United States,* 767 F.2d 33 (2d Cir.1985); *United States v. Clearfield State Bank,* 497 F.2d 356, 359 (10th Cir.1974), an order that is part of a district court opinion or memorandum does not, *see* Advisory Committee Note to 1963 Amendment of Fed.R.Civ.P. 58 (judgment must be set forth on a separate document "distinct from any opinion or memorandum"); *Kanematsu-Gosho, Ltd. v. M/T Messiniaki Aigli,* 805 F.2d at 48; *Ellender v. Schweiker,* 781 F.2d 314, 317 (2d Cir.1986) (order at end of stipulation of dismissal did not satisfy separate-document requirement); *Calmaquip Engineering West Hemisphere Corp. v. West Coast Carriers Ltd.,* 650 F.2d 633, 635–36 (5th Cir.1981) (opinion entitled "Order Granting Motion for Summary Judgment" did not satisfy requirement); *Caperton v. Beatrice Pocahontas Coal Co.,* 585 F.2d 683, 686 & n. 5, 689 (4th Cir.1978) (ten-page "Opinion and Order" did not satisfy re-

quirement); 6A *Moore's Federal Practice* ¶ 58.02, at 58–17 (2d ed. 1986).

The ruling being appealed here was explicated in the Second Decision, a 14–page opinion that stated "So Ordered" at the end. This did not satisfy the separate-document requirement. That requirement was satisfied by entry of the October 23, 1986 judgment. Thus defendants' time to appeal did not begin to run until October 23, and their November 17 notice of appeal was timely. Accordingly, we have jurisdiction of the present appeal.

## III.  THE MERITS

Turning to the merits, we conclude that defendants were entitled to judgment insofar as plaintiffs sought relief from the increase in the rates for future sewage services, because plaintiffs had no protectable property interest in future rates. On the other hand, plaintiffs did have such an interest in the rates they had been required to pay in the past, and they were entitled to notice and an opportunity to be heard before the Town could properly approve a retroactive rate increase.

### A.  Property Interests

■ Property interests are created, and their dimensions defined, by state law. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). Whether a state-created interest amounts to a property right of which the holder may not be deprived without procedural due process is a question of federal constitutional law. *See Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978). A state-created entitlement that cannot properly be eliminated except for cause is a property right of which the holder may not be deprived without procedural due process. *See Cleveland Board of Education v. Loudermill,* 470 U.S. at 538–39, 105 S.Ct. at 1491–92; *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982); *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. at 11–12, 98 S.Ct. at 1561–62. Conversely, if state law makes

the pertinent official action discretionary, one's interest in a favorable decision does not rise to the level of a property right entitled to procedural due process protection. *See Schwartz v. Mayor's Committee on the Judiciary of the City of New York,* 816 F.2d 54, 56 (2d Cir.1987); *Sullivan v. Town of Salem,* 805 F.2d 81, 84 (2d Cir. 1986).

The New York provision under which sewer rates are set provides as follows:

> A sewage-works corporation shall supply each city, town, village or other municipal area or district wherein such corporation operates, and the inhabitants therein, with facilities or make provision for the collection, treatment and disposal of sewage at fair, reasonable and adequate rates agreed to between the corporation and the local governing body or bodies.... Rates shall be reviewable at intervals of not more than five years or at any time by petition of the corporation or motion by the local governing body on written notice after a period of ninety days. The petition of a corporation shall be determined within ninety days of its filing, and in the event a determination is not rendered within such period of time, the petition shall be deemed approved. The local governing body of a city or village, or of a county or town on behalf of a sewer district or for a special sewer improvement shall have the power to contract with a sewage-works corporation for collection, treatment or disposal of sewage. No contract for such services shall be executed for a period greater than ten years.

N.Y.Transp.Corp.Law § 121. Though, so far as we are aware, no New York court has considered the rights of the inhabitants under this section, state court decisions on analogous issues indicate the conclusions the New York courts would reach on whether homeowners have a property interest in prospective and retrospective sewer rates.

New York courts have made clear that when a person has provided services with the understanding that he will receive payment at a promulgated rate, he has a prop-erty interest in receiving that rate, and he is deprived of his interest if the rate is changed retroactively. *See Clove Lakes Nursing Home v. Whalen,* 45 N.Y.2d 873, 874, 410 N.Y.S.2d 804, 805, 383 N.E.2d 106 (1978) (per curiam); *Birchwood Nursing Home v. Whalen,* 70 A.D.2d 1020, 1021, 418 N.Y.S.2d 212, 213 (3d Dep't 1979); *White Plains Nursing Home v. Whalen,* 53 A.D.2d 926, 927, 385 N.Y.S.2d 392, 394 (3d Dep't 1976), *aff'd,* 42 N.Y.2d 838, 397 N.Y.S.2d 378, 366 N.E.2d 79 (1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1244, 55 L.Ed.2d 768 (1978). We have held that such an interest is a property right that cannot be eliminated without procedural due process. *See Oberlander v. Perales,* 740 F.2d 116, 120 (2d Cir.1984).

On the other hand, the New York courts have repeatedly held that state law creates no property interest in rates to be paid for services to be provided in the future, even where, as here, a statute or regulation requires that such rates be reasonable. *See Sigety v. Ingraham,* 29 N.Y.2d 110, 115–16, 324 N.Y.S.2d 10, 14, 272 N.E.2d 524 (1971); *Klein v. Axelrod,* 81 A.D.2d 935, 935, 439 N.Y.S.2d 510, 512 (3d Dep't), *aff'd,* 54 N.Y.2d 818, 443 N.Y.S.2d 653, 427 N.E.2d 950 (1981); *White Plains Nursing Home v. Whalen,* 53 A.D.2d at 927, 385 N.Y.S.2d at 394. With respect to § 121, notwithstanding its requirement that approved sewage rates be "fair, reasonable and adequate," N.Y.Transp.Corp.Law § 121, and notwithstanding the reviewability of rate approvals for compliance with this requirement, *see, e.g., Salem Hills Sewage Disposal Corp. v. Village of Voorheesville,* 80 A.D.2d 479, 480, 439 N.Y.S.2d 760, 761–62 (3d Dep't 1981), a municipality's setting of prospective rates under that section is a "function involving the exercise of judgment and discretion." *Flacke v. Salem Hills Sewage Disposal Corp.,* 91 A.D.2d 739, 741, 457 N.Y.S.2d 992, 995 (3d Dep't 1982). In *Oberlander v. Perales,* 740 F.2d at 120, we held that New York statutes or regulations similar to § 121 created no property right in prospective rates, and hence procedural due process protections did not attach. *Cf. Norwegian Nitrogen Products Co. v. United*

*States,* 288 U.S. 294, 318, 53 S.Ct. 350, 359, 77 L.Ed. 796 (1933) ("No one has a legal right to the maintenance of an existing rate or duty.").

The line drawn by the New York courts between past and future rates to be paid to the provider of services is equally applicable to the receiver of the services who is required to pay the effective rates. Just as the provider is entitled to rely on the promulgated rates as fixing his income for past services, the receiver is entitled to rely on those rates as establishing his expense for past services. The reliance of both sides on the promulgated rates with respect to past services rises to the level of a property interest of which neither may be deprived without procedural due process. And just as the provider of services is not entitled to expect that his rate of compensation will not be reduced for services yet to be provided, the homeowner is not entitled to expect that the rates for future services will not be raised. With respect to future services, the ratemaker retains discretion to fix the rates deemed appropriate, and thus neither the hope of the provider nor the hope of the receiver rises to the level of a property interest.

■ In the present case, it is plain that, in their use of Denver Sewer's sewage disposal services, plaintiffs had relied prior to October 8, 1984, on the rates previously announced. Accordingly, with respect to pre-October 8 services, the district court properly ruled in its Second Decision that plaintiffs had a property right in the promulgated rates and that they were deprived of that right when the rates were changed retroactively. While § 121 states that rates are "reviewable" at least every five years, nothing in the section, or in state court interpretations of it, or in prior rate determination practice under the section suggests that previously promulgated rates are tentative and not to be relied upon when there has been no announcement that they are tentative or subject to retroactive change.

■ On the other hand, plaintiffs were not entitled, under state law, to rely on existing rates in perpetuity, and hence they had no property interest in rates for future services. Their claim asserting that the Town's determination of such rates deprived them of property without procedural due process should therefore have been dismissed.

**B.** *The Process Due With Respect to Rates for Past Periods*

Insofar as the Town's approval of a retroactive increase is concerned, we conclude that the district court properly ruled that due process required that plaintiffs be given notice and an opportunity to be heard before they could be deprived of their interest in the existing rates for past services. The New York courts have held that for retroactive rate changes, procedural due process both requires and is satisfied by notice, an opportunity prior to deprivation to be heard in some fashion (including by written submissions or by informal consultation through representatives), an opportunity for a prompt administrative-level hearing after the initial order of retroactive rates, and an opportunity for a judicial challenge. *See Clove Lakes Nursing Home v. Whalen,* 45 N.Y.2d at 875, 410 N.Y.S.2d at 806, 383 N.E.2d at 108; *Birchwood Nursing Home v. Whalen,* 70 A.D.2d at 1021, 418 N.Y.S.2d at 213; *Niagara Falls Memorial Medical Center v. Axelrod,* 112 Misc.2d 180, 183–84, 446 N.Y.S.2d 891, 893 (Sup.Ct.Niagara Co.), *aff'd,* 88 A.D.2d 777, 451 N.Y.S.2d 518 (4th Dep't 1982); *Rowland v. Axelrod,* 108 Misc.2d 803, 804, 438 N.Y.S.2d 891, 892 (Sup.Ct.Albany Co. 1981). In the context of retroactive rate determinations, we have held that these procedures satisfy due process. *See Oberlander v. Perales,* 740 F.2d at 120–21. Defendants contend that the opportunity for a subsequent judicial hearing, without any of the other protections, sufficed. For several reasons we disagree.

First, affording notice before the deprivation of property is itself a fundamental requirement of procedural due process. *See Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. at 13–15, 98 S.Ct. at 1562–63. The lack of such notice is in itself a violation of procedural due process. *See,*

*e.g., Schroeder v. City of New York,* 371 U.S. 208, 211–14, 83 S.Ct. 279, 281–83, 9 L.Ed.2d 255 (1962); *Walker v. City of Hutchinson,* 352 U.S. 112, 115–17, 77 S.Ct. 200, 202–03, 1 L.Ed.2d 178 (1956); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Because of the way in which this case reaches us, we have no occasion to rule on the correctness of the district court's suggestion that here public notice would have satisfied due process. We note, however, "[t]he general rule ... that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." *Schroeder v. City of New York,* 371 U.S. at 212–13, 83 S.Ct. at 282–83; *see Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. at 318–20, 70 S.Ct. at 659–60.

Second, due process ordinarily requires some opportunity to be heard prior to the deprivation of property. *See Cleveland Board of Education v. Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493; *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. at 19, 98 S.Ct. at 1565. Although a full-scale trial-type hearing is not required prior to a retroactive rate determination, *see Oberlander v. Perales,* 740 F.2d at 120–21; *see generally Londoner v. City of Denver,* 210 U.S. 373, 386, 28 S.Ct. 708, 714, 52 L.Ed. 1103 (1908) (due process requires only opportunity for argument and informal submissions of proof prior to special benefits assessment), some opportunity to be heard is required before any deprivation of property occurs unless granting such an opportunity is impracticable or there are exigent circumstances, *see Patterson v. Coughlin,* 761 F.2d 886, 892 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); *Burtnieks v. City of New York,* 716 F.2d 982, 988–89 (2d Cir.1983). Defendants made no attempt whatever to show impracticability or exigent circumstances here. Affording an opportunity at least for written submissions or informal consultation prior to making its retroactive rate determination hard-

ly seems likely to have overly burdened the Town's resources. Indeed, since the Town Board apparently had no difficulty in receiving both written and oral presentations by Denver Sewer, there is no apparent reason why it could not also have received such presentations on behalf of plaintiffs. We note that affording such opportunity to the Association would likely have sufficed to satisfy due process since the record does not suggest that any Association member had any claims peculiar to him. *See Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1235–36 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

Nor can it be said that affording such an opportunity would have been impracticable because the Town, in failing to afford the Association an opportunity to be heard, acted in a "random and unauthorized" manner, as that term is used in *Hudson v. Palmer,* 468 U.S. 517, 531–34, 104 S.Ct. 3194, 3202–04, 82 L.Ed.2d 393 (1984), *see also Parratt v. Taylor,* 451 U.S. 527, 539–43, 101 S.Ct. 1908, 1914–17, 68 L.Ed.2d 420 (1981). We have held that conduct is not random and unauthorized when taken by a "high-ranking official having final authority over the decision-making process." *Dwyer v. Regan,* 777 F.2d 825, 832–33 (2d Cir.1985), *modified on other grounds,* 793 F.2d 457 (2d Cir.1986); *accord Patterson v. Coughlin,* 761 F.2d at 891–92; *Burtnieks v. City of New York,* 716 F.2d at 988–89. *A fortiori,* the action of a high-ranking official body, such as the Town Board, which has "final authority over the decision-making process" cannot be considered random and unauthorized.

■ Finally, though no notice or opportunity to be heard would have been required if the act of the Town Board had been legislative, the granting of a retroactive increase in sewer rates cannot be considered legislative action. The test for determining whether official action is adjudicative or legislative focuses on the function performed by the decisionmaker, not on the method of selecting the decisionmaker, *cf. Minnesota State Board for Community Colleges v. Knight,* 465 U.S. 271, 284, 104 S.Ct. 1058, 1065–66, 79 L.Ed.2d 299 (1984)

(policy decision by executive agency would be legislative action), or on the form in which the decision is announced, *see Philadelphia Co. v. SEC*, 175 F.2d 808, 812–13, 816–17 (D.C.Cir.1948) (SEC's revocation of exemption to Rule was adjudicative action where the only intended and actual effect was to determine disputed issue in particular case), *vacated as moot*, 337 U.S. 901, 69 S.Ct. 1047, 93 L.Ed. 1715 (1949). Action is adjudicative when a decision is based on a determination of " 'facts about the parties and their activities, businesses, and properties.' " *Langevin v. Chenango Court, Inc.*, 447 F.2d 296, 300 (2d Cir.1971) (Friendly, J.) (quoting K. Davis, *Administrative Law Treatise* § 7.02, at 413 (1958)); *accord WBEN, Inc. v. United States*, 396 F.2d 601, 618 (2d Cir.) (Friendly, J.), *cert. denied*, 393 U.S. 914, 89 S.Ct. 240, 21 L.Ed.2d 200 (1968); *SEC v. Frank*, 388 F.2d 486, 491–92 (2d Cir.1968) (Friendly, J.). Proceedings that "adjudicate disputed facts in particular cases" are subject to the requirements of procedural due process. *United States v. Florida East Coast Ry. Co.*, 410 U.S. 224, 245, 93 S.Ct. 810, 821, 35 L.Ed.2d 223 (1973). Under these standards, a retroactive rate determination based solely on facts about one supplier is adjudicative and subject to the requirements of procedural due process. *See Ohio Bell Telephone Co. v. Public Utilities Comm'n*, 301 U.S. 292, 302–05, 57 S.Ct. 724, 729–31, 81 L.Ed. 1093 (1937); *cf. Londoner v. City of Denver*, 210 U.S. at 385, 28 S.Ct. at 713–14 (holding that board's application of legislatively-mandated standard for special benefits assessment to particular cases was subject to requirements of procedural due process).

The Town's granting of Denver Sewer's request for a retroactive rate increase appears to have been based solely on the Town's acceptance of facts presented by Denver Sewer about its purported history of losses. The record does not suggest that there was any consideration of facts relating to the sewage disposal industry in general, much less of questions of social or economic policy or of broad economic factors such as general rates of inflation, interest, or return. Similarly, the facts that plaintiffs would have presented, had they been given the opportunity, apparently would have related solely to Denver Sewer and its corporate parent, *i.e.*, they would have challenged the alleged history of losses both as inaccurate and as irrelevant or misleading because of prior representations by Denver Sewer's parent. The Town's resolution of the dispute between Denver Sewer and the plaintiffs was therefore not a policy decision but rather an adjudicative determination of disputed facts about the parties and their activities, businesses, and properties.

Accordingly, we agree with the district court that the Town's retroactive rate determination deprived plaintiffs of property rights without affording them procedural due process. We therefore affirm that part of the judgment that declared invalid the rates determined by the Town Board at its October 8, 1984 meeting for the period January 1, 1983, to October 8, 1984. Of course, nothing in our opinion today prevents the Town from redetermining rates for this period in compliance with the demands of due process.

## CONCLUSION

For the reasons stated above, we affirm so much of the judgment as declared invalid the retroactive rates determined by the Town, but we reverse so much of the judgment as declared invalid the prospective rates determined by the Town.

Each party shall bear his or its own costs of this appeal.

VAN GRAAFEILAND, Circuit Judge, dissenting:

If I were convinced that my colleagues were not doing exactly what the district court did, *i.e.*, finding section 121 unconstitutional as applied, I would be pleased to concur in Judge Kearse's customarily fine opinion. However, because I am satisfied that this is not the case, I respectfully dissent.

A federal court which is asked to rule on a constitutional question implicating the validity of a State law is obligated to offer an

opportunity for intervention to the State Attorney General and to avoid reaching the constitutional question if the case can be decided under State law. The district court did neither.

Notice and the opportunity to intervene are specifically provided for whenever "the constitutionality of any statute of [a] State affecting the public interest is drawn in question" in a suit between private parties. 28 U.S.C. § 2403(b). Because Congress believed that declarations of unconstitutionality have ramifications beyond the interests of the litigants in a particular case, *Heckler v. Edwards*, 465 U.S. 870, 882, 104 S.Ct. 1532, 1539, 79 L.Ed.2d 878 (1984), it intended that the giving of notice be a mandatory obligation of the courts, "even if the claim is obviously frivolous or may be disposed of on other grounds." *Merrill v. Town of Addison*, 763 F.2d 80, 82 (2d Cir.1985).

The present suit is one in which the constitutionality of a New York statute has been drawn in question. Denver Sewer Corporation is a creature of the New York Transportation Corporations Law, and its rates must be set in accordance with the provisions of that Law. It is undisputed that, in agreeing to an increase in sewer rates without public notice or hearing, both the Corporation and the Town believed they were lawfully exercising the authority granted them by N.Y.Transp.Corp.L. § 121. The Town Board's resolution expressly stated that the rate increase petition was granted pursuant to that section. In a newspaper article which appeared the following day, two Town Board members and the attorneys for both the Town and the Sewer Corporation were reported as expressing the belief that New York law did not require them to conduct a public hearing for the rate increase.

Thus, it was clear from the outset that the constitutionality of section 121 was an issue in the case. As plaintiffs conceded in the district court, "this is a case of first impression, involving the interplay between section 121 of the N.Y.Transp. [Corp.] Law and Due Process requirements as developed in very recent Supreme Court decisions." Although the district court stated in its decision that it was not finding section 121 unconstitutional on its face but only the Town Board's application of the statute in this case, it is well established that the constitutionality of a State statute is "drawn in question" for the purposes of 28 U.S.C. § 2403 by a challenge to its application in the facts of a particular case. *Fleming v. Rhodes*, 331 U.S. 100, 103–04 & n. 4, 67 S.Ct. 1140, 1142–43 & n. 4, 91 L.Ed. 1368 (1947).

Because the sewer rate determination pursuant to section 121 was a matter "affecting the public interest", the district court erred in neglecting its statutory obligation to certify the existence of the constitutional challenge to the New York Attorney General. We now compound that error by finding unconstitutionality while neglecting our own obligation to notify the Attorney General. By enjoining the grant of a retroactive rate increase without a prior hearing, we are effectively stating that, if section 121 permits this to be done, it is unconstitutional. In sum, our holding of unconstitutionality must refer to the statute which the Town purported to follow. In my view, the legitimate State interests that Congress sought to protect through 28 U.S.C. § 2403(b) are fully implicated by a decision of this nature, and the State Attorney General should have been given an opportunity to present the State's position.

I believe the district court also erred in failing to adequately consider whether a decision on the constitutional question could have been avoided through the resolution of an unsettled issue of State law. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Despite that failure, and despite the fact that *Pullman* abstention has not been requested by either party on appeal, this Court has a sua sponte obligation to consider it in the first instance. *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 480 n. 11, 97 S.Ct. 1898, 1904 n. 11, 52 L.Ed.2d 513 (1977); *Catlin v. Ambach*, 820 F.2d 588, 591 (2d Cir.1987). It is a firmly established doctrine of constitutional adjudication that all federal courts must consider possible statutory grounds

for decision, even where, as here, both sides to the dispute have urged the Court to decide the constitutional question presented. *Jean v. Nelson*, 472 U.S. 846, 854–57, 105 S.Ct. 2992, 2997–99, 86 L.Ed.2d 664 (1985). A rule to the contrary would "in effect reduce the abstention doctrine to a pleader's option," *Zwickler v. Koota*, 389 U.S. 241, 257, 88 S.Ct. 391, 400, 19 L.Ed.2d 444 (1967) (Harlan, J., concurring), and allow plaintiffs "to frustrate the policies underlying the doctrine of abstention by [the] simple expedient" of not raising any State law claims in their complaint. *Reid v. Board of Educ.*, 453 F.2d 238, 242 n. 7 (2d Cir.1971).

Although N.Y.Transp.Corp.L. § 121 is silent as to whether public notice and a hearing are required before a town may approve a private sewage corporation's petition for an increased sewer rate, I believe there is a reasonable likelihood that the New York courts would construe that statute in conjunction with other statutory provisions to require the notice and hearing which the residents of RR Village claim under the Fourteenth Amendment. The apparent purpose of permitting private sewage works corporations to enter a field previously reserved to public agencies was to provide a vital health service to the inhabitants of a subdivision without creating additional expense to the municipality involved, and thus to solve a vexing problem for growing communities. *Wild Oaks Util., Inc. v. Green*, 112 Misc.2d 53, 54, 445 N.Y.S.2d 941 (1981); *Town of Clifton Park v. Rivercrest Sewage Corp.*, 96 Misc.2d 122, 124–25, 408 N.Y.S.2d 932 (1978). The State Legislature felt, however, that a private sewage corporation's existence need be guaranteed for five years only and that thereafter it might be necessary or advantageous for the corporation to discontinue its operations. Should this occur, the local governing body is given the right to take over the operation and to "levy taxes, or sewer rents for such purposes in the same manner as if such facilities were owned by a city, town or village, as the case may be." N.Y.Transp.Corp.L. § 119(4).

Article 14–F of New York's General Municipal Law, which permits municipalities to establish and impose sewer rents by local law or ordinance, *see* Gen.Mun.L. § 452(2), provides that amendments to such sewer rents must be accomplished in the same manner. *Id.* This section, which was enacted in 1951, provides that sections 90 and 95 of the Village Law and sections 130 and 133 of the Town Law shall apply to both the adoption and amendment of ordinances establishing sewer rents. Section 90 of the Village Law, which has been succeeded by section 20–2002, required notice and a hearing for the enactment and amendment of the pertinent ordinances. Section 130 of the Town Law contained similar provisions. The New York State Comptroller has issued several opinions to the effect that such sewer rent amendments must be accompanied by notice and public hearing. *See* Opns.St.Comp. (1985) No. 85–69; (1979) No. 79–135. *See also* N.Y.Town L. §§ 202–a(5), 202–b, 202–d; N.Y.Mun.Home Rule L. § 20(5).

Where, as here, a statute is part of an interconnected scheme of regulation and is silent in a matter that is explicit elsewhere in the scheme, the statute may be read in conjunction with its companion statutes so as to provide a logical, overall consistency. *See Boehning v. Indiana State Employees Ass'n, Inc.*, 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975) (per curiam); *Shelton v. Smith*, 547 F.2d 768, 770 (2d Cir.1976). I think the chances are reasonably good that, if given the opportunity to do so, the New York courts would hold that the Legislature expected municipalities to provide the same notice and hearings for proposed rate changes before they take over the operation of sewage works corporations as they are specifically required to provide after they take over such operations. The interests of the public are the same in both situations. That this is the consensus of the municipalities involved is apparent from the fact that public hearings almost invariably have been held in the reported cases involving petitions for sewage rate increases under section 121. *Cf. Winters v. Lavine*, 574 F.2d 46, 71–72 (2d Cir.1978). I do not consider the dictum in *Interna-*

*tional Paper Co. v. Sterling Forest Pollution Control Corp.*, 105 A.D.2d 278, 283, 482 N.Y.S.2d 827 (1984), a case in which a public hearing was held, to be binding New York authority for holding that a hearing is not required by section 121.

*Pullman* abstention is applicable even though, as here, plaintiffs challenge the constitutionality of a State law only as applied in a particular case. *Winters v. Lavine, supra*, 574 F.2d at 52, 69–70. That was our holding in *Catlin v. Ambach, supra*, 820 F.2d 588, which involved another New York statute that had not been construed by the New York courts. We there raised the issue of *Pullman* abstention on our own motion, recognizing that a construction of the statute at issue might moot the constitutional issue "and spare this Court from rendering a constitutional advisory opinion." *Id.* at 591. I believe that is what we should do in the instant case.

In addition to all the recognized grounds for *Pullman* abstention, I would only note that, if the State courts were to hold that State law required notice and a hearing before either the prospective or retroactive rate increases were approved, plaintiffs would receive all the relief they seek, not the half-a-loaf this Court is now providing.