Howard and Jacqueline SACHER, Plaintiff,

v.

VILLAGE OF OLD BROOKVILLE, Village Of Old Brookville Board Of Trustees, Village Of Old Brookville Planning Board, Village of Old Brookville Zoning Board of Appeals, Bernard D. Ryba (Mayor), Michael Dergarabedian, Richard Shaper, Matthew Schamroth, Marilyn Genoa (Board of Trustees), Laurence M. Werfel, James Farrell William Clark, Dr. Kevin Glassman (Planning Board), Lisa Larocca, Dorothy Young Davidow, Eileen Farrell (Zoning Board of Appeals), Matthew Moed (Building Inspector), John Chase (Village Attorney), Defendants.

No. CV 12–6110.

United States District Court, E.D. New York.

Sept. 4, 2013.

Angelo G. Ferlito, Esq., Copiague, NY, Attorney for Plaintiff.

Sokoloff Stern, LLP, by: Steven C. Stern, Esq., Mark Radi, Esq., Carle Place, NY, Attorneys for Defendants.

## MEMORANDUM AND ORDER

LEONARD D. WEXLER, District Judge.

Plaintiffs Howard and Jacqueline Sacher ("Plaintiffs" or the "Sachers") bring this civil rights action alleging that actions taken by Defendants in connection with Plaintiffs' zoning applications violated their Constitutionally protected civil rights. The Sachers are homeowners in the Village of Old Brookville (the "Village"). The local entities named as Defendants are the Village, its Planning Board and the Village Zoning Board of Appeals (the "ZBA"). Also named as Defendants are individual members of the Village entities named, as well as Village Mayor Bernard D. Ryba, Matthew Moed, the Village building inspector and Village Attorney John Chase.[1]

---

1. Plaintiff has discontinued this action as against ten previously named individuals, (in-

cluding Defendant Allen Miller, who submitted a separate motion to dismiss) and the

Plaintiff's Amended Complaint (hereinafter "Complaint") sets forth two federal causes of action pursuant to 42 U.S.C. § 1983 ("Section 1983"). Those claims allege violation of the Sachers' Constitutionally protected rights to equal protection and due process of law. Presently before the court is Defendants' motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint for failure to state a claim. For the reasons that follow, the motion is denied in part and granted in part.

## BACKGROUND

### I. Factual Background

The facts set forth below are drawn from the Complaint and construed in the light most favorable to Plaintiffs. Also considered are other documents properly before the court in the context of this motion, including the decisions of the Village ZBA, and that of the Supreme Court of the State of New York, County of Nassau. *See Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993) (when considering motion to dismiss court properly considers factual allegations of complaint as well as documents incorporated by reference, matters of which judicial notice may be taken, and documents known to and relied upon by plaintiff).

### A. The Plaintiffs' Home and the Cottage

The Sachers are owners of a home which sits on a three acre parcel of land located within the Village. The home includes various improvements including a pool, pool house and squash court. In 2008 or 2009, Plaintiffs constructed, without seeking a building permit or other approval, an addition to a pre-existing accessory cottage located on their property (the "Cottage"). The additions to the Cottage included adding to the square footage of the first floor as well as construction of a new second story. The newly expanded Cottage was built in the violation of various Village zoning codes, including those specifying the allowable amount of floor coverage and setback requirements. Since its expansion, Plaintiffs' daughter has resided in the Cottage with her family.

### B. Plaintiffs' Variance Requests and the ZBA Hearing

After completion of the Cottage, Plaintiffs sought to legalize the construction by seeking several variances and rulings with respect to both the building and their daughter's occupancy therein. With respect to the residency issue, Plaintiffs acknowledged that their daughter's permanent residency violated current zoning rules, but sought to establish that the Cottage was continually used as a residence, and therefore the residency was permissible as a vested nonconforming use.

The Village ZBA held a hearing on Plaintiffs' applications and members of that board visited the Cottage. At a hearing on Plaintiffs' applications, the ZBA heard the testimony of Plaintiffs' next-door neighbor who stated that since the addition of the second story, he could see the Cottage from his property. He testified further that the enlarged Cottage significantly altered the character, nature and ambiance of the Village, was detrimental to the character of the neighborhood and was visually offensive to his surroundings. Defendant Village Trustee Richard Shaper ("Shaper") and Defendant ZBA members Lisa LaRocca ("LaRocca") and Eileen Farrell ("Farrell") visited the Sachers' property to observe the Cottage. La-

Village Architectural Review Board. The caption in this Memorandum and Order reflects the identity of the Defendants that remain.

Rocca noted its large size, and that the Cottage could be seen from the neighbor's property. Shaper agreed that the Cottage was visible from the neighbor's property. Farrell noted that the Cottage was prominently visible from the street.

The ZBA also heard testimony and reviewed documents with respect to the necessity for adding a second story to the Cottage, and the Sachers' right to maintain the structure as a permanent residence. As to the necessity of the second story, Howard Sacher testified that it was needed to provide storage space in a building with no basement. The ZBA noted the availability of storage space throughout the Sacher property, including the 6,840 square foot main house, and a three car garage that was stated to having been used for storage. With respect to the residency issue, the Sachers attempted to show, as noted, that the Cottage was continually used as a residence in a manner sufficient to allow it to be maintained as such as a vested non-conforming use. The ZBA considered documents and testimony regarding the residency issue, the substantial nature of the requested variances, the impact upon physical or environmental conditions, and the self-created nature of the Sachers' zoning predicament.

### C. The Decision of the ZBA

The Sachers' application was granted in part and denied in part. Specifically, the ZBA granted all variances necessary for the Sachers to maintain the first floor additions to the Cottage. While the ZBA denied the Sachers' claim of a vested right to continual residential nonconforming use, it allowed a variance for the continued use of the Cottage as a permanent residence by Plaintiffs' daughter and her family. While the ZBA thus allowed the requested variances with respect to the first floor and residency of the Cottage, it denied those that would have legalized the second story addition thereto. The Defendant–ZBA members LaRocca, Farrell and Dorothy Young Davidow voted in favor of the foregoing decision of the ZBA.

### D. Article 78 Appeal of the Decision of the ZBA

In a proceeding commenced pursuant to Article 78 of the New York CPLR, the Sachers appealed the decision of the ZBA. On December 5, 2012, Supreme Court, Nassau County (the "Article 78 Court") issued a decision affirming that of the ZBA. The Article 78 Court stated first the standard of review to be applied, noting that the determination of the ZBA would not be disturbed so long as it properly weighed the benefits of granting the requested variances against any detriment to the health, safety and welfare of the community. Affirming the ZBA decision, the Article 78 Court stated that there was no evidence that the ZBA did not properly apply the correct balancing test, and that it had a rational basis, supported by sufficient evidence, to support its decision.

First, the Article 78 Court held that there was substantial evidence to support the denial of the claim of a vested continual non-conforming use of the Cottage. With respect to the variance sought for the second story addition, the Article 78 Court held that the ZBA properly considered the detriment to the Sachers' neighbors' property, the lack of support for the claimed need for additional storage space, and the substantial nature of the variance sought. That court further noted that the Sachers' difficulties were self-created by their failure to obtain pre-construction building permits and approvals, a factor entitled to be given "considerable weight." After recitation of all factors, the Article 78 Court denied the Sachers the relief requested and dismissed the proceeding. On January

9, 2013, the Sachers filed a notice of appeal of the decision of the Article 78 Court. The court is informed that the appeal is pending, but has not yet been fully briefed before the Appellate Division of the Supreme Court, Second Department.

## II. *The Complaint*

The Complaint sets forth two claims pursuant to 42 U.S.C. § 1983 ("Section 1983"). The first Section 1983 claim asserts a violation of Plaintiffs' right to equal protection of the law. The second asserts a violation of procedural due process. Plaintiffs' equal protection claim alleges disparate treatment pursuant to a "class of one" theory. Specifically, Plaintiffs allege that the decisions of the ZBA: (1) denying a variance to allow the second story Cottage addition to remain, and (2) denying the Sachers' claim of a vested non-conforming right to use the Cottage as a residence, were made "at the behest of" the Defendant Mayor of the Village, Bernard D. Ryba ("Mayor Ryba"). According to the complaint, Mayor Ryba harbors a personal animus toward the Sachers who "zealously supported" another candidate for the mayoralty. This animus is alleged to have resulted in secret meetings between Mayor Ryba, the Village Attorney and its Chief Building Inspector. During those meetings, the Mayor and Village Attorney are stated to have acted to prevent the grant of the variances sought and are alleged to have pressured ZBA members to vote against the Sacher applications.

In support of the allegation that their variance applications were singled out for disparate treatment, the Complaint states that "[o]ther residents of the Village who are similarly situated were either granted variances or not required to obtain variances and are permitted to continue the various uses which are in violation of Old Brookville Village ordinances." Complaint

¶ 28. The Complaint states, upon information and belief, that there are at least 60 properties within the Village with accessory structures (like the Cottage) that have second stories used as rental properties. The complaint lists two such "recently constructed" structures in particular, located on properties located at 45 Valentines Lane and 60 Hogland Lane in the Village. The complaint also lists the addresses of eleven other specific Village properties that contain structures allegedly used for residential occupancy, "as well as two story accessory structures," including one located at 4 Stonegate Lane, that appears to be located on the same street as Plaintiffs' home. Complaint ¶ 58. The Complaint also refers to various other properties, including "but not limited to" two on Stonegate Lane (Plaintiffs' street) and one at 241 Woodlands Road, that are alleged to contain various other non-specified "violations." Complaint ¶ 60. Plaintiffs state that their attempts to obtain information regarding zoning decisions with respect to decisions made as to similarly situated homes via Freedom of Information Law ("FOIL") requests were thwarted when the Mayor and Defendant Village Attorney John Chase acted together to direct that the Village Clerk not comply with the requests. Complaint ¶¶ 48–52.

In an attempt to show personal animus, Plaintiffs state that Mayor Ryba acted to prevent the Defendant Village Inspector Matthew Moed from approving the continued use of the Cottage as a residence. Complaint ¶ 55. Plaintiffs also plead, on information and belief, that the Defendant Village Attorney Chase persuaded them to withdraw their original application to the ZBA and assured them that a different application would be approved. Further, Mayor Ryba is alleged to have acted to persuade two ZBA members who might have voted in Plaintiffs' favor to recuse

themselves from participating the any decision with respect to the variances sought.

The Complaint's second Section 1983 claim alleges a violation of Plaintiffs' right to procedural due process. This claim alleges that Plaintiffs were deprived of their procedural right to have their variance applications heard by an independent ZBA. Instead, according to Plaintiffs, the ZBA acted at the direction of Mayor Ryba and pursuant to off-the-record discussions during which Ryba is alleged to have demanded that the ZBA deny Plaintiffs' applications. Complaint ¶ 69–71. The actions of the Mayor are alleged to have made it impossible for the Sachers to have a fair and impartial hearing on the merits of their applications. Complaint ¶ 72.

Plaintiffs seek compensatory damages on their Section 1983 claims in the amount of $1.5 million and punitive damages in the amount of $13.5 million. They also seek declaratory relief granting them the variances sought.

### III. *The Motion to Dismiss*

Defendants move to dismiss Plaintiffs' claims in their entirety. The Section 1983 equal protection claim is argued to be subject to dismissal on the grounds that: (1) there is no evidence that the Sachers were treated differently from any similarly situated property owners; (2) the discretionary nature of the ZBA's determination bars the claim, and (3) the decision of the Article 78 Court bars the claim on the ground of collateral estoppel. Plaintiffs' due process claim is sought to be dismissed on the grounds that Plaintiffs cannot make the required threshold showing of a Constitutionally protected property right and, in any event, they received all process that was due.

In the event that the court declines to order dismissal based upon the aforementioned grounds, the individual Defendants seek dismissal on the separate grounds that Plaintiffs cannot show the required personal involvement of any in the alleged violations, and that these Defendants are, in any event, entitled to full or qualified immunity for actions taken as members of Village boards. Finally, the Defendant Village seeks dismissal of any *Monell* claim of municipal liability on the ground that no such claim is plausibly stated. The court turns now to consider the merits of the motion to dismiss.

### DISCUSSION

### I. *Standards on Motion to Dismiss*

In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaints as true, and draw all reasonable inferences in favor of plaintiffs. *Bolt Electric, Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court rejected the standard set forth in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955; *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although heightened factual pleading is not the new standard, *Twombly* holds that a "formulaic recitation of cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 678, 129 S.Ct. 1937. Further, a pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

With these principles in mind, the court turns first to consider the collateral estop-

pel effect of the decision of the Article 78 Court, and then to the motion on the merits.

## II. Collateral Estoppel

### A. Legal Principles

 This federal court is bound to give the same preclusive effect to state court judgments as they are afforded by the courts of the State of New York. 28 U.S.C. § 1738; *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *see Allen v. McCurry*, 449 U.S. 90, 105, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (applying collateral estoppel from state court judgment to a federal § 1983 claim). Under New York law, the doctrine of collateral estoppel bars re-litigation of an issue of fact fully and fairly litigated in a prior proceeding resulting in a final judgment on the merits. *Fahey v. City of New York*, 2012 WL 413990 *6 (E.D.N.Y.2012). Preclusive effect is afforded so long as: (1) the identical issue was necessarily decided in the prior action, and decisive of the issue in the subsequent action, and (2) the party sought to be precluded from re-litigating the issue had a full and fair opportunity to contest the prior determination. *Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir.2007); *Gowanus Indus. Park, Inc. v. Hess Corp.*, 2012 WL 273657 *6 (E.D.N.Y. 2012).

 Collateral estoppel applies in Section 1983 cases to bar re-litigation of issues that were "actually and necessarily" litigated in the context of an Article 78 proceeding. *McGuinn v. Smith*, 523 Fed. Appx. 764 (2d Cir.2013); *e.g., Genova v. Town of Southampton*, 776 F.2d 1560 (2d Cir.1985); *Peterson v. City of New York*, 2012 WL 2148181 *2 (S.D.N.Y.2012); *Ruggiere v. Bloomberg*, 2009 WL 3259156 *5 (E.D.N.Y.2009); *see also Constantine v. Teachers College*, 448 Fed.Appx. 92 (2d

Cir.2011); *Quadrozzi Concrete Corp. v. City of New York*, 149 Fed.Appx. 17 (2d Cir.2005).

### B. Disposition of Collateral Estoppel Argument

Defendants argue that the holding of the Article 78 Court as to the rationality of the zoning decisions made is dispositive as to the merits of Plaintiffs' equal protection claim. In opposition, Plaintiffs argue that Defendants are barred, as a matter of law, from raising a collateral estoppel argument in the context of this motion to dismiss.

 As a threshold matter, the court rejects Plaintiffs' position with respect to the propriety of raising a collateral estoppel defense on a motion to dismiss. To the contrary, it is entirely permissible to raise claim and issue preclusion in the context of such motions. *See, e.g., Conopco, Inc. v. Roll Intern.*, 231 F.3d 82 (2d Cir.2000); *Ruggiere*, 2009 WL 3259156 *1 (E.D.N.Y. 2009). As to the merits of Defendants' collateral estoppel argument, the court agrees that the Article 78 Court made a specific finding of rationality with respect to the findings of the ZBA. Thus, the Article 78 Court held that the determination of the ZBA "had a rational basis, and was indeed supported by the evidence," and that there was therefore no basis upon which to disturb its ruling. A finding of such rationality of action would likely bar Plaintiffs' equal protection claim. As noted, however, the decision of the Article 78 Court is presently on appeal to the Appellate Division and that court has not yet rendered a decision. Because the issue has not yet been fully litigated, this court will not, at this juncture, hold Plaintiffs to be collaterally estopped from litigation of a potentially dispositive issue. *See Peterson*, 2012 WL 2148181 *1 (noting that court

awaited decision of Appellate Division before deciding preclusive effect of Article 78 findings). Instead, the court will turn to consider the motion to dismiss the Section 1983 equal protection and due process claims on the merits.

### III. *Equal Protection Claim*

#### A. *Legal Principles*

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all those similarly situated be treated alike. *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). A plaintiff claiming a violation of the equal protection clause may proceed on the theory that he was treated differently based upon a "class of one." Such a claim is stated where a plaintiff shows intentional treatment different from others similarly situated, and a lack of rational basis for that treatment. *Ruston v. Town Bd. for Town of Skaneateles,* 610 F.3d 55, 58 (2d Cir.2010); *Viteritti v. Incorporated Village of Bayville,* 918 F.Supp.2d 126, 134–35 (E.D.N.Y.2013); *MacPherson v. Town of Southampton,* 738 F.Supp.2d 353, 371 (E.D.N.Y.2010).

A plaintiff proceeding on a "class of one" equal protection theory must plead "an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston,* 610 F.3d at 59, quoting, *Clubside, Inc. v. Valentin,* 468 F.3d 144, 159 (2d Cir.2006). In particular, a class-of-one plaintiff must establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a

mistake." *Id. Adam J. v. Village of Greenwood Lake,* 2013 WL 3357174 *7 (S.D.N.Y.2013); *Viteritti,* 918 F.Supp.2d at 135; *MacPherson,* 738 F.Supp.2d at 371.

To state a class of one equal protection claim in a zoning context, a plaintiff must make more than a general statement of treatment different from those similarly situated. Even the mention of particular properties alleged generally to be similar is insufficient to state a claim. Instead, the properties cited must be so similar that "no rational person could see them as different …" *Ruston,* 610 F.3d at 60. Thus, a plaintiff alleging unfair treatment in a zoning/building context, must plead specific examples of applications and hearings that were similar to plaintiff's application and demonstrative of the disparate treatment alleged. *Amid v. Village of Old Brookville,* 2013 WL 527772 *6 (E.D.N.Y.2013); *see Ruston,* 610 F.3d at 60.

#### B. *Disposition of the Motion to Dismiss the Equal Protection Claim*

The court considers first whether Plaintiffs state a claim with respect to the first element of their equal protection claim— whether they show a sufficiently "extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston,* 610 F.3d at 59. Plaintiffs' efforts to show such similarity range from: (1) the general allegation that the Village allows non-specified zoning violations to exist in unnamed properties without taking enforcement action, to (2) allegations stating specific properties, by address, that are alleged to be similarly situated to that of the Sachers.

Plainly, the general allegations of "various" properties with "numerous" existing zoning violations are insufficient to state a class of one equal protection disparate

treatment claim. Such allegations state nothing in particular about similarity. Even Plaintiffs' allegations regarding the particular properties located at 2 and 9 Stonegate Lane, and 241 Woodland Road are insufficient to state a class of one equal protection claim. While Plaintiff does name these particular properties, the Complaint refers only to "various" violations existing at those properties, and therefore fails to allege facts plausibly showing the level of similarity required to state an equal protection claim.

In addition to the clearly insufficient allegations above, however, the Complaint references several other specifically named properties alleged to have added both "accessory structures for residential occupancy" and "two story accessory structures." Plaintiffs allege that owners of these properties are being permitted to continue their uses of accessory cottages as residences without obtaining permits, variances or otherwise being subject to zoning code enforcement. Plaintiffs state further that denial of their requests for FOIL information puts them in the position of being unable to show further evidence of similarity.

■ In the context of this motion to dismiss, the court holds that the allegations with respect to particular properties with allegedly illegal two story accessory residential structures, along with Plaintiffs' allegations with regard to their FOIL requests, are just plausible enough to survive a motion to dismiss. In so holding, the court focuses on the fact that with respect to these particular properties, Plaintiffs have pled the existence of properties containing the same type of structure for which they were denied a variance.

Through the discovery process, Plaintiffs may be able to demonstrate the level of similarity required show an equal protection violation.[2]

To go beyond the discovery phase and survive a motion for summary judgment, however, Plaintiffs will be required to show not only the facts alleged in the Complaint, but be prepared to come forward with additional evidence regarding similarity. Thus, for example, it will be important for Plaintiffs to show that allegedly similar structures were built without the necessary permits or variances and were granted post-building variances. Also important to any finding of similarity will be establishing whether neighbors adjacent to the properties named objected to the allegedly similar structures at a public hearing in the same way as the Sachers' next-door neighbor. Certainly, a neighbor's protest regarding the obstruction of his particular view by an illegal second story addition will distinguish Plaintiffs' case from others, and militate against a finding of the level of similarity required to establish an equal protection claim. Also militating against a finding of similarity will be whether the location of Plaintiffs' property, as noted to be observed by Village board members, distinguishes the finding of the ZBA in this case from others cited. Other factors might also prove important in distinguishing the Sachers' property, including the availability of storage space and square footage involved. Ultimately, Plaintiffs will need to show, by additional evidence, that the properties cited are so similar that "no rational person could see them as different ..." *Ruston*, 610 F.3d at 60.

**2.** The court makes no finding with respect to the propriety of the scope of Plaintiffs' FOIL request which sought information regarding zoning decisions made as early as 2005. It will be for the Magistrate Judge to determine the scope of information to which Plaintiffs are entitled in the discovery process herein.

In view of the fact that the court holds the pleading of similarity sufficient survive a motion to dismiss, the court will not make findings with respect to the allegations of ill-will stemming from the Sachers' support of their candidate of choice for Mayor. Such issues of intent are particularly ill-suited to disposal on the pleadings. The court notes, however, that Plaintiffs' allegations regarding the mayoral election are significantly undercut by the fact that the majority of the relief sought they sought before the ZBA was in fact, granted. Indeed, with respect to the request to validate their daughter's occupancy, the ZBA granted relief broader than that requested by Plaintiffs, allowing for creation of a covenant allowing for the residency of direct lineal ascendants and descendants of residents of the principle dwelling on the property.

In sum, the court declines to dismiss the equal protection claim at this pleading stage of the litigation. While thin, Plaintiffs have stated an equal protection class of one claim. It remains to be seem whether such a claim will survive a motion for summary judgment.

## IV. *Due Process Claim*

In order to establish a procedural due process violation, a plaintiff must "(1) identify a property right, (2) establish that governmental action with respect to that property right amounted to a deprivation, and (3) demonstrate that the deprivation occurred without due process." *Mihaly v. Town of Trumbull Water Pollution Control Authority,* 2013 WL 2948329 *4 (D.Conn.2013), quoting, *Rosa R. v. Connelly,* 889 F.2d 435, 438 (2d Cir.1989). As to the first requirement, the court notes that Constitutionally protected interests are created, and defined, by reference to state law. *RR Village Ass'n, Inc. v. Denver Sewer Corp.,* 826 F.2d 1197, 1201 (2d Cir. 1987).

Where the right asserted is the right to a building permit or zoning variance, the existence of discretionary action with respect to such applications renders the alleged interest nonprotected. *See RR Village Ass'n, Inc.,* 826 F.2d at 1201–02. Thus, in such contexts, where the deciding authority has discretion to grant or deny the relief requested, the individual applying for a permit or variance has no property interest in the issuance of a permit or grant of their application. *Shervington v. Village of Piermont,* 2012 WL 1757527 * 16 (S.D.N.Y.2012). Because such circumstances present no protected property right, there can be no claim of a due process violation. *Id.; see RR Village,* 826 F.2d at 1202 ("if state law makes the pertinent official action discretionary, one's interest in a favorable decision does not rise to the level of a property right entitled to procedural due process protection"); *Id.* at 1202; *see also Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir.1996) (no protected property interest in variance where zoning regulations granted zoning board with discretionary approval powers); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 192 (2d Cir.1994) (landowners had no property interest in enforcement of zoning laws for adjacent property since municipal officials had broad discretion in determining whether to grant or deny building permit, site plan and variances); *RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911, 918–19 (2d Cir.1989) (no property interest existed in building permit since town officials had wide discretion to either grant or deny the permit).

Here, there is no question but that the Sachers had no protected property interest in the granting of any permit or variance sought. Under these circumstances they state no claim of a due pro-

cess violation. Any such claim is therefore dismissed.

*CONCLUSION*

For the foregoing reasons, Defendants' motion to dismiss is denied in part and granted in part. The court denies the motion to dismiss Plaintiffs' equal protection claim but grants the motion to dismiss Plaintiff's claim of a due process violation. The Clerk of the Court is directed to terminate the motions appearing at docket entry numbers 14 and 16. The parties shall continue to engage in discovery with respect to the claim that remains.

SO ORDERED